**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **GARY PADGETT, #235251** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO.: 2:05-CV-608-A** |
| | ) |
| **GWENDOLYN MOSLEY et. al.** | ) |
| | ) |
| **Defendants** | ) |

## SPECIAL REPORT

Come now the Defendants, Commissioner Donal Campbell, Warden Gwendolyn Mosley, Correctional Officers Willie Bryant, Brian Gavins, and Alvin Jernigan, by and through the Office of the Attorney General – State of Alabama, and in accordance with this Honorable Court's Order dated August 8, 2005, hereby submit the following Special Report:

## PARTIES

1. The Plaintiff, Gary Padgett, is an Alabama Department of Corrections inmate, who is incarcerated at the Easterling Correctional Facility in Clio, Alabama.

2. The Defendant, Donal Campbell is employed as the Commissioner for the Department of Corrections.

3.  The Defendant, Gwendolyn Mosley, is employed as Warden III with the Alabama Department of Corrections at Easterling Correctional Facility in Clio, Alabama.

4.  The Defendant, Willie Bryant, is employed as Correctional Supervisor I with the Alabama Department of Corrections at Easterling Correctional Facility in Clio, Alabama.

5.  The Defendant, Bryan Gavins, is employed as Correctional Officer I with the Alabama Department of Corrections at Easterling Correctional Facility in Clio, Alabama.

6.  The Defendant, Alvin Jernigan, is employed as Correctional Officer I with the Alabama Department of Corrections at Easterling Correctional Facility in Clio, Alabama.

## PLAINTIFF'S ALLEGATIONS AND DEMANDS

The Plaintiff alleges that from July 2004 to the present that the Defendants have violated his Sixth, Eighth and Fourteenth Amendment rights by denying him access to the law library during his incarceration at Easterling. Further, the Plaintiff claims that the Defendants illegally searched him in violation of his Fourth Amendment rights and charged him with disciplinary action. The Plaintiff demands $100,000 in damages from Defendant Mosley.

## DEFENDANTS' EXHIBITS

1.  Exhibit 1- Affidavit of Defendant Gavins

2.  Exhibit 2 – Affidavit of Defendant Mosley with attachments

3.  Exhibit 3 – Affidavit of Defendant Bryant

4.  Exhibit 4 – Affidavit of Defendant Jernigan

The attached affidavits and documentation serve as Rule 26 initial disclosures.

## DEFENDANTS' RESPONSE

1.  The Defendants deny that they violated the Plaintiff's constitutional right of access to the law library and the American with Disabilities Act during his incarceration at Easterling Correctional Facility.

2.  The Defendants deny that they violated the Plaintiff's constitutional rights under the Fourth, Sixth, Eighth and Fourteenth Amendments during his incarceration at Easterling Correctional Facility.

3.  The Defendants deny that they harassed the Plaintiff and deprived him of any of his constitutional rights.

4.  The Defendants assert that the Plaintiff has failed to articulate any claims in order to entitle him to any relief.

5.  The Defendants assert the defenses of sovereign and qualified immunity in regards to the Plaintiff's suit for monetary damages.

6.  The Defendants assert that the Plaintiff is not entitled to any compensatory or punitive damages.

7.  The Defendants assert that the Plaintiff is not entitled to costs or any other type of relief.

## STATEMENT OF FACTS

The facts surrounding the events in question are set out in detail in the affidavits of the Defendants and submitted herein as exhibits. After a review of the evidence, this Honorable Court should find that the Defendants have not violated any of inmate Padgett's constitutional rights during his incarceration at Easterling Correctional Facility.

According to the Defendants' affidavits, on July 16, 2004, inmate Padgett arrived at Easterling Correctional Facility. Since that time, inmate Padgett has not made any written or verbal requests to use the library. The Easterling library has an officer assigned to supervise the library and its functions. It is located in the gym and the entrance to the facility is not currently equipped with a ramp. However, there are plans to build a ramp for the law library. The library is open on Tuesday-Friday from 12:00 p.m. to 7:30 p.m. and on Saturday from 8:00 a.m. to 4:00 p.m. Inmates are able to use the library when their assigned dormitory has yard and gym call. Inmates can request additional time to use the library by submitting a written request to the law library officer. The Defendants maintain that if inmate Padgett had requested to use or enter the library then, arrangements would have been made to accommodate him. (See Defendants' Exhibits 1-4)

Defendant Gavin further states that the library is equipped with two emergency exits which adhere to fire codes. There are also tables available for inmates to use who are wheelchair dependent. Other inmates with wheelchairs have used the law library without any complaints. Inmate Padgett was assigned to the Restricted Dorm at Easterling since July 13, 2005. The law library officer visits the Restricted Dorm to

collect written requests for legal materials from the inmates placed in this area. Inmate Padgett has not filled out or requested any material from the library. (See Defendants' Exhibits 1-2).

In July 2004, prison officials suspected that inmate Padgett had brought tobacco products from the visitation yard. They escorted inmate Padgett to the Segregation Unit where he was handcuffed and leg chained according to Easterling's Standard Operating Procedure C-50, (Inmates Suspected of Promoting Prison Contraband). According to those guidelines, inmate Padgett was observed by prison officials until he told them he needed to defecate in the designated bucket. After prison officials had determined that inmate Padgett did not have tobacco and no other contraband was found, he was released back to his assigned dormitory. Inmate Padgett was not charged with any rule violation. (See Defendants' Exhibit 2, attachment 1).

## I.

## THE PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST THE DEFENDANTS THAT THEY VIOLATED HIS CONSTITUTIONAL RIGHTS PURSUANT TO 42 U.S.C. § 1983.

The Plaintiff contends that the Defendants violated his rights under the Fourth, Sixth, Eighth and Fourteenth Amendments of the Constitution. Specifically, the Plaintiff alleges that the Defendants violated his right to access the law library at the prison, conducted an illegal search of him and harassed him during his incarceration at Easterling. The Plaintiff's frivolous allegations are due to be denied.

## A. Access to the Courts

It is well settled that prisoners have a constitutional right to access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). To have standing to seek relief under this right, however, a plaintiff must show actual injury by 'demonstrat[ing] that a nonfrivolous legal claim ha[s] been frustrated or ... impeded.' *Lewis v. Casey*, 518 U.S. 343, 353, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (footnote omitted)." *Jackson v. State Bd. of Pardons and Paroles* 331 F.3d 790, 797 (11th Cir. 2003)

> "[T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint."

*Lewis v. Casey*, 116 S. Ct. 2174, 2180 (1996). Under *Lewis v. Casey*, the inmate must show the alleged inadequacies of the library or legal assistance program have resulted in the dismissal of a complaint. *Id.* In the instant case, the Plaintiff alleges that he has been denied access to use the law library at the prison because he is confined to a wheelchair. Despite the Plaintiff's complaints about the alleged inadequacy of the law library, he fails to provide any documentation that demonstrates that he suffered an actual injury. Contrary to the Plaintiff's assertions, the Defendants have stated that since inmate Padgett arrived at Easterling on July 16, 2004, he has not made a written or verbal request to use the law library. The Defendants further maintain that if inmate Padgett had made such a request, then they would have accommodated his needs. Although the library which is located in the gym does not currently have a ramp, it can accommodate

wheelchairs. For example, other wheelchair dependent inmates have used the law library without any complaints. Further, the law library is equipped with tables that wheelchair dependent inmates can use and it has several emergency exits.

In *Tennessee v. Lane,* 541 U.S. 509, 124 S.Ct. 1978 (2004) the Supreme Court has held that:

> Title II [of the ADA] does not require States to employ any and all means to make judicial services accessible to persons with disabilities, and it does not require States to compromise their essential eligibility criteria for public programs. It requires only 'reasonable modifications' that would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for the service. ... But in the case of older facilities, for which structural change is likely to be more difficult, a public entity may comply with Title II by adopting a variety of less costly measures, including relocating services to alternative accessible sites and assigning aides to assist persons with disabilities in accessing services. Only if these measures are ineffective in achieving accessibility is the public entity required to make reasonable structural changes. An in no event is the entity required to undertake measures that would impose an undue financial or administrative burden, threaten historic preservation interests, or effect a fundamental alteration in the nature of the service.

Further, the Eleventh Circuit has held that under the ADA, "even if an inmate is a 'qualified' individual and entitled to reasonable accommodations, ...that terms like 'reasonable' are relative to circumstances, and the circumstances of a prison are different

from those of a school, an office, or a factory... Consequently, courts must be mindful of the necessary balance between the ADA's goal of integration and a prison's unique need for security, safety, and other penological concerns. *Miller v. King*, 384 F.3d 1248, 1266 (11th Cir. 2004).

In this case, the Defendants have implemented various measures at Easterling for handicapped inmates, such as the Plaintiff, to use the law library despite the fact that they are dependent on wheelchairs. However, inmate Padgett has not availed himself to utilize the prison law library like other wheelchair dependent inmates. As a result, inmate Padgett cannot demonstrate that he has suffered any actual injury from his own decision to not utilize the prison law library. Therefore, inmate Padgett's unfounded and frivolous claim that the Defendants have violated his constitutional right to access the courts is due to be denied.

## B. Harassment & Illegal Search

Inmate Padgett's allegations that the Defendants conducted an illegal search of him and harassed him in violation of this Fourth and Eighth Amendment rights are also meritless. According to Defendant Mosley, in July 2004, prison officials suspected that inmate Padgett had brought tobacco products from the visitation yard. They escorted inmate Padgett to the Segregation Unit where he was handcuffed and leg chained according to Easterling's Standard Operating Procedure C-50, (Inmates Suspected of Promoting Prison Contraband). Based on those guidelines, inmate Padgett was observed by prison officials until he told them he needed to defecate in the designated bucket. After prison officials had determined that inmate Padgett did not have tobacco or no other

contraband was found, he was released back to his assigned dormitory. Inmate Padgett was not charged with any rule violation. (See Defendants' Exhibit 2, attachment 1).

Moreover, Defendant Mosley denies that she harassed inmate Padgett and labeled him a sexual predator. Based on monitored telephone calls and the Plaintiff's criminal conviction and nine year sentence for sexual abuse of three of his grandchildren, Defendant Mosley wrote a letter dated February 7, 2005, to the Department of Human Resources and expressed concern that inmate Padgett may have had sexual contact with his stepdaughter. Defendant Mosley also indicated that the stepdaughter may have issues regarding her mental health. Until these concerns were addressed, Defendant Mosley removed the stepdaughter and her minor son from inmate Padgett's visitor list. (See Defendants' Exhibit 2, attachment 2)

Clearly, Defendant Mosley and the other Defendants acted in accordance with their duties to promote safety and security at Easterling when inmate Padgett was searched for illegal contraband and monitored regarding his visitors. The Plaintiff has not provided any factual basis against the Defendants in support of Fourth and Eighth Amendment claims. The Defendants maintain that the Plaintiff has failed to state a cognizable claim against them. Therefore, the Plaintiff's meritless allegations that his constitutional rights under the Fourth and Eighth Amendments are due to be denied.

## II.

### THE DEFENDANTS ARE IMMUNE FROM DAMAGES LIABILITY IN REGARDS TO THE PLAINTIFF'S CLAIMS

#### A.  Eleventh Amendment immunity

The Eleventh Amendment bars suits against a State in Federal Court, unless the State's immunity has either been waived by the State or abrogated by Congress in a valid exercise of its authority.  When Congress enacted 42 U.S.C. § 1983 it did not intend to abrogate immunities "well grounded in history and reason."  *Tenney v. Brandhove,* 341 U.S. 367, 376 (1951); *Marsh v. Butler County,* 268 F.3d 1014 (11th Cir. 2001).  The Supreme Court has explained that certain immunities were so well established at the time 42 U.S.C. § 1983 was enacted in 1871 that it assumed "Congress would have specifically so provided had it wished to abolish" them.  *Buckley v. Fitzsimmons,* 509 U.S. 259, 268 (1993).  An Eleventh Amendment immunity defense is jurisdictional.  *Edelman v. Jordan,* 415 U.S. 651, 677-78 (1974).

The Supreme Court has stated:

> "There can be no doubt ... that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit.  *Edelman v. Jordan,* 415 U.S. 651 (1974); *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459 (1945); *Worcester County Trust Co. v. Riley,* 302 U.S. 292 (1937).  Respondents do not contend that Alabama has consented to this suit, and it appears that no consent could be given under Art. I, § 14, of the Alabama Constitution, which provides that 'the State of Alabama shall never be made a defendant in any court of law or equity.'"

*Alabama v. Pugh,* 438 U.S. 781, 782 (1978).  The Defendants are state employees, and, to the extent that they are sued in their official capacities, the suit against

them is in effect a suit against the State. In addition, Alabama has not consented to be sued or waived its immunity in this case. Therefore, as state actors, the Defendants are immunized under the Eleventh Amendment from the Plaintiff's complaint. Thus, to the extent that the Defendants are sued for monetary damages in their official capacities, they are absolutely immune from liability.

**B. Qualified immunity**

Additionally, the Defendants are protected by the defense of qualified immunity from the Plaintiff's claims. A defendant is entitled to qualified immunity from § 1983 suits if he was acting in his capacity as a state official and he did not violate "clearly established statutory law or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer,* 122 S.Ct. 2508, 2511 (2002). A constitutional right is considered clearly established when it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 2515; *Willingham v. Loughnan,* 321 F.3d 1299 (11th Cir. 2003)

Further, "[q]ualified immunity protects government officials from civil trials and liability when their conduct in performing discretionary functions 'violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Blakenship*, 163 F.3d 1284, 1288 (11th Cir. 1998), quoting *Lassiter v. Alabama A & M Univ. Bd. of Trustees,* 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc). Because the alleged acts of the Defendants consisted of discretionary functions and the actions did not violate any clearly established constitutional or statutory rights, the

Defendants are protected by qualified immunity. *Wilson, supra* (holding that the marshal, wardens, and corrections officer were protected by qualified immunity).

The Eleventh Circuit has also held that "[p]rison officials have 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Wilson*, 163 F.3d at 1295. Here, the Defendants exercised discretion in the performance of their duties and sought to preserve internal order, discipline and institutional security at the prison when they conducted a valid search and limited inmate Padgett's visitors at the prison. The Defendants are entitled to qualified immunity because they did not violate the Plaintiff's constitutional rights. Further, the Defendants cannot be subjected to personal liability for alleged violations of Title II of the ADA. *Miller v. King*, 384 F.3d 1248 (11th Cir. 2004).

### III.

### THE PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST DEFENDANT CAMPBELL UNDER THE THEORY OF VICARIOUS LIABILITY

Although the Plaintiff has named Defendant Donal Campbell, Commissioner of the Department of Corrections as a party in this lawsuit, he has failed to show how Defendant Campbell had any specific involvement in the alleged violation of his constitutional rights. Because Defendant Campbell is named in his official capacity, it appears that the Plaintiff may be asserting that this high ranking state official is liable for the action or inaction of the other defendants named herein. Nonetheless, it is well settled that "supervisory officials are not liable under § 1983 for the unconstitutional acts

of their subordinates on the basis of respondeat superior or vicarious liability." *Miller v. King*, 384 F.3d 1248 (11th Cir. 2004); *Dean v. Barber*, 951 F.2d 1210 (11th Cir. 1992). Therefore, the Plaintiff's claims against Defendant Campbell are due to be dismissed.

## CONCLUSION

The evidence presented by the Defendants proves that the Plaintiff's claims are without merit. The Plaintiff has not produced sufficient evidence of his claims to support a jury verdict in his favor. The Plaintiff is not entitled to any declaratory relief. In addition, the Defendants are entitled to sovereign and qualified immunity in regards to the Plaintiff's suit for liability and damages. Therefore, this Honorable Court should enter a summary judgment in favor of the Defendants.

WHEREFORE, the above-cited facts and law considered, the Defendants request that a summary judgment be entered in their favor.

Respectfully submitted,
TROY KING (KIN 047)
ATTORNEY GENERAL
BY:

s/LaVette Lyas-Brown
LAVETTE LYAS-BROWN (LYA 001)
ASSISTANT ATTORNEY GENERAL
COUNSEL FOR THE DEFENDANTS

ADDRESS OF COUNSEL:
Office of the Attorney General
11 South Union Street
Montgomery AL 36130
334-242-7443
334-242-2433 (Fax)

## CERTIFICATE OF SERVICE

I hereby certify that on this the 15th day of September , 2005, that I have

electronically filed the foregoing document with the Clerk of the Court using the

CM/ECF system, and that I served a true and correct copy of the foregoing has been

forwarded by U.S. First Class Mail, postage prepaid and properly addressed to:

> Gary Padgett #235231
> Easterling Correctional Facility
> 200 Wallace Dr.
> Clio, AL 36017-2615

> s/LaVette Lyas-Brown
> LAVETTE LYAS-BROWN
> ASSISTANT ATTORNEY GENERAL