IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

| | |
|---|---|
| GARY PADGETT, #235 251 | * |
| Plaintiff, | * |
| v. | *    2:05-CV-608-MEF |
| | (WO) |
| GWENDOLYN MOSLEY, *et al.*, | * |
| Defendants. | * |

_____

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff, Gary Padgett ["Padgett"], filed this 42 U.S.C. § 1983 action on June 27, 2005 seeking "the sum of 100 thousand dollars directly from Warden Gwendolyn Mosley in both her official and individual capacities." (*See* Doc. No. 1 at 4.) Padgett claims that Defendants refused to provide him access to Easterling Correctional Facility's ["ECF"] law library in violation of his constitutional rights and the Americans with Disabilities Act. Padgett further claims that Defendants violated his constitutional rights by subjecting him to cruel and unusual punishment without justification, by threatening and harassing him, by falsely labeling him as a sexual predator, by interfering with his visitation privileges, and by conspiring against him. Named as Defendants are former Commissioner Donal Campbell, Warden Gwendolyn Mosley, Correctional Officers Bryan Gavins and Alvin Jernigan, and Lieutenant Willie Bryan.[1]

---

[1] During the pendency of this action Donal Campbell was succeeded in office by Commissioner Richard Allen.

Defendants filed a special report and supporting evidentiary materials refuting Padgett's claims for relief. In accordance with the instructions contained in the court's order entered on September 16, 2005 (Doc. No. 12), the court deems it appropriate to treat this report as a motion for summary judgment. Thus, this case is now pending on Defendants' motion for summary judgment. Upon consideration of the motion, the evidentiary materials filed in support thereof, and Padgett's opposition to the motion (Doc. No. 15), the court concludes that Defendants' motion for summary judgment is due to be granted.

## I. STANDARD OF REVIEW

To survive the properly supported motion for summary judgment filed by Defendants, Padgett is required to produce some evidence which would be admissible at trial supporting his constitutional claims. Rule 56(e), *Federal Rules of Civil Procedure*. Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To meet this standard, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576 -1577 (11th Cir. 1990). A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984). Thus, when a plaintiff fails to make a showing adequate to establish the existence of an element essential to his case, and on which the plaintiff will bear the burden

of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987).

Where all the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987); *Wright v. Southland Corp.,* 187 F.3d 1287 (11th Cir. 1999); *Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1135 (11th Cir. 1996); *McMillian v. Johnson,* 88 F.3d 1573, 1584-1585 (11th Cir. 1996). Summary judgment is therefore appropriate when the pleadings, admissible evidentiary materials and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c) *Federal Rules of Civil Procedure*; *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990).

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). In this case, Padgett has failed to demonstrate that there is a genuine issue of material fact in order to preclude summary judgment.

## II. DISCUSSION

*A. Access to Courts*

Padgett, who is confined to a wheelchair, maintains that Defendants have refused to provide him with the constitutional right of access to ECF's law library. Specifically, he contends that he has been refused assistance by an inmate law clerk assigned to the law library and has had to seek legal assistance from other general population inmates. Padgett further complains that the library has no emergency exits or ramps for inmates in wheelchairs, that there is insufficient room for wheelchairs to move about within the law library, and that there are no tables in the law library for handicapped inmates. (Doc. No. 1 at 5.)

The law is well settled that prison inmates are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court clarified and limited the right to assistance created in *Bounds*. Specifically, the Court mandated that "an inmate alleging a violation of *Bounds* must show actual injury" arising directly from the alleged inadequacies in the law library, legal assistance program or correctional policy. *Lewis*, 518 U.S. at 349. In identifying the specific right protected by *Bounds*, the Court explained that "*Bounds* established no . . . right [to a law library or to legal assistance]. The right that *Bounds* acknowledged was the (already well-established) right of **access to the courts**. . . . [P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to

present claimed violations of fundamental constitutional rights to the courts.'" *Id*. at 350-351 (emphasis in original) (citations omitted). The Court further determined *Bounds* did not require "that the State . . . enable the prisoner to ***discover grievances***, and to ***litigate effectively*** once in court. . . . To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is [not something] ... the Constitution requires." *Id*. at 354 (emphasis in original).

The Court likewise rejected the argument that the mere claim of a systemic defect, without a showing of actual injury, presented a claim sufficient to confer standing. *Lewis*, 518 U.S. at 349. Moreover, *Lewis* emphasizes that a *Bounds* violation is related to the lack of an inmate's capability to present claims. *Id*. at 356. "*Bounds*, which as we have said guarantees no particular methodology but rather the conferral of a capability -- the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts. When any inmate . . . shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided, he demonstrates" the requisite actual injury. *Id*. at 356. Finally, the Court discerned that the injury requirement is satisfied only when an inmate has been denied "a reasonably adequate opportunity to file nonfrivolous legal claims challenging [his] convictions or conditions of confinement. . . . [I]t is that capability, rather than the capability of turning pages in a law library, that is the touchstone." *Id*. at 356-357. "[T]he Constitution does not require that prisoners . . . be able to conduct generalized research, but only that they be able to present their grievances to the

courts - a more limited capability that can be produced by a much more limited degree of legal assistance." *Id*. at 360; *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) (inmate must demonstrate that inability to gain access to legal materials resulted in "actual injury" to his "capacity of bringing contemplated challenges to sentences or conditions of confinement before the courts").

The Court admonished that federal courts should allow prison officials to determine the best method of ensuring that inmates are provided a reasonably adequate opportunity to present their nonfrivolous claims of constitutional violations to the courts. *Lewis*, 518 U.S. at 356. A federal district court must "'scrupulously respect[] the limits on [its] role,' by 'not . . . thrust[ing] itself into prison administration' and instead permitting '[p]rison administrators [to] exercis[e] wide discretion within the bounds of constitutional requirements.' [*Bounds*, 430] U.S. at 832-833, 97 S.Ct. at 1500." *Id*. at 363

The unrefuted evidence before the court reflects that since his arrival at ECF on July 16, 2004, Padgett has never made any verbal or written requests to use the law library. Defendants acknowledge that the law library, located within the institutional gym, does not have an access ramp but they state that had Padgett requested to use or enter the law library, arrangements would have been made to accommodate such a request. Further, contrary to Padgett's contentions, Defendants assert that there are two emergency exits which are marked as well as tables for wheelchair dependent inmates. (Doc. No. 10, Exhs. 1, 2.)

Defendants' evidence also shows that on July 13, 2005 Padgett was placed in a restricted dorm. Inmates assigned to the restricted dorm are not allowed movement within

ECF like general population inmates. Nonetheless, a law library officer visits the restricted dorm to fill out and receive written requests for legal material. Defendants maintain that Padgett did not fill out or request any legal material from the law library during his assignment to the hot dorm. (Doc. No. 10, Exh. 1.)

The evidence before this court does not support Padgett's access to courts claim. Padgett has been challenged to come forth with some showing that Defendants engaged in conduct that so hindered his efforts to pursue a non-frivolous legal claim that he experienced adverse consequences or an <u>actual</u> injury from the alleged deprivation. *Lewis*, 518 U.S. at 349. He has failed to do so. His perceived impairment based on his handicapped status and/or temporary assignment to a restricted dorm is insufficient to establish an "actual injury" as such is contemplated by the holding in *Lewis*. Because he has failed to produce sufficient evidence to support his constitutional claim, the undersigned concludes that Defendants are entitled to summary judgment on Padgett's access to courts claim.

*B. The ADA Claim*

To the extent Padgett brings his alleged inability to access the law library claim under the Americans with Disabilities Act ["ADA"], his claim for discrimination on the basis of a disability must also fail. "To prove a claim under Title II of the ADA, a plaintiff must establish: (1) that he is a qualified individual with a disability; (2) that he was excluded from the participation in or denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such entity; (3) by reason of such disability." *See Shotz v. Cates,* 256 F.3d 1077, 1079 (11th Cir. 2001) (*citing* 42 U.S.C. §

12132).

Assuming, *arguendo*, that Padgett otherwise meets the requirements of the ADA, the court is not persuaded that he has shown he has been subjected to discrimination. Padgett claims that because he is in a wheelchair, he is denied access to the law library because it lacks ramp access and lacks adequate space and facilities for handicapped individuals. Thus, the question for the court is whether Defendants have discriminated against Plaintiff due to his confinement in a wheelchair which serves to deny him participation in or the benefits of programs, services, or activities at ECF. Padgett's claim fails, however, because he has presented *no* evidence to suggest that he has actually been denied access to any program, service, or activity at ECF. *See Lincoln Cercpac v. Health and Hosps. Corp.,* 920 F. Supp. 488, 498 (S.D.N.Y.1996) ("[P]laintiffs here have not defined a service available to the non-disabled that they are being denied by reason of their disability. Accordingly, we find plaintiffs have no substantial likelihood of success on their ADA claims.").

Although Padgett asserts that the law library has no ramp access, he does not dispute the evidence before the court which indicates that he has not made any verbal or written requests to use the law library or that correctional officials would make arrangements to accommodate a request by him to use or enter the law library. Additionally, Padgett does not dispute Defendants' evidence which indicates that tables and emergency exits are wheelchair accessible. Accordingly, the court is not persuaded that Padgett's allegations demonstrate that he has been denied access to any of the benefits of any prison program, service, or activity at ECF. Rather, the evidence before the court suggests that Defendants

would accommodate Padgett's needs, not discriminate against him.

In light of the foregoing, Padgett's ADA claim fails for lack of proof. His bare accusation regarding hampered access to ECF's law library is no substitute for evidence and, thus, is insufficient to defeat summary judgment. *See Leigh v. Warner Bros. Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000) ("conclusory allegations without specific facts in support have no probative value."). Accordingly, Defendants should be granted summary judgment on Padgett's ADA claim.

*C.  The Eighth Amendment Claim*

In July 2004 correctional officials suspected Padgett of bringing in tobacco from the visitation yard. As a result, prison officials escorted him to the segregation unit where he was secured in accordance with standard operating procedures until such time as he defecated in a bucket for the purpose of checking for contraband. After Padgett defecated in the bucket and no tobacco or other contraband was found, he was released back to his assigned dormitory. Padgett was not charged with any disciplinary violation. (Doc. No. 10, Exh. 2.)

Padgett alleges that requiring him to be chained and shackled for more than 25 hours until he defecated in a buck subjected him to unconstitutional conditions of confinement. Defendants deny that their actions taken in response to Padgett's suspected possession of contraband violated his constitutional rights.

The Constitution proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337 (1981). Only actions which deny inmates "the minimal civilized measure of life's necessities" are grave

-9-

enough to establish constitutional violations. *Id.* at 347; *see also Wilson v. Seiter*, 501 U.S. 294 (1991) (overcrowding, without more, does not rise to the level of a constitutional violation). The Constitution "does not mandate comfortable prisons, but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes*, 452 U.S. at 349). Thus, it is well-settled that the treatment a prisoner receives and the conditions under which he is confined are subject to constitutional scrutiny. *Helling v. McKinney*, 509 U.S. 25 (1993).

A prison official has a duty under the Eight Amendment to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer,* 511 U.S. at 832 (quoting *Hudson v. Palmer,* 468 U.S. 517, 526-27 (1984)); *Helling,* 509 U.S. at 33. There are two parts of the Eleventh Circuit's interpretation of *Farmer*. First, there is an objective component. The objective component requires an inmate to prove the he was denied the "minimal civilized measure of life's necessities." *Id*. The challenged prison condition must be "extreme" and must pose "an unreasonable risk of serious damage to his future health." *Chandler v. Crosby*, 379 F.3d 1278, 1289-90 (11th Cir. 2004). "This objective standard embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . but must also be balanced against competing penological goals." *LaMarca v. Turner,* 995 F.2d 1526, 1535 (11th Cir.1993). The second component is subjective. It requires Padgett to show facts which allow a reasonable trier of fact to infer that the prison official had a "sufficiently culpable

state of mind." *Id* . "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837. Thus, on a properly supported motion for summary judgment on an Eighth Amendment claim, a plaintiff must produce "sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Purcell v. Toombs Cnty.,* 400 F.3d 1313, 1319 (11th Cir. 2005).

Though unpleasant, Padgett presents no evidence tending to show that the temporary hardships about which he complains were of sufficient severity to implicate the Eighth Amendment. *See Key v. McKinney,* 176 F.3d 1083, 1086 (8th Cir. 1999) (prisoner who was restrained in handcuffs and shackles for 24 hours, making it more difficult for him to relieve himself, did not suffer a constitutional violation); *Dixon v. Godinez,* 114 F.3d 640, 643 (7th Cir. 1997) (duration of deprivation must be considered in determining whether condition of confinement is unconstitutional); *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir. 1988) (temporary neglect of prisoner's hygienic needs is insufficient to establish an Eighth Amendment violation). Additionally, Padgett fails to produce evidence which shows that Defendants knew of an obvious risk of serious harm to him and disregarded that risk, *Farmer* 511 U.S. at 837, or that Defendants' actions resulted in the denial of the minimal civilized measure of life's necessities. *Rhodes*, 452 U.S. at 347. Consequently, Defendants' motion for summary judgment on Padgett's Eighth Amendment claim is due to be granted.

D.  *The Reputation/Verbal Harassment Claim*

Padgett contends that Defendant Mosley verbally harassed and threatened him by

erroneously labeling him a sexual predator and submitting a false report of such conduct to the State's human resources department. To the extent Padgett claims that Defendant Mosley's actions defamed him or injured his reputation, he fails to state a claim for relief in this § 1983 action. An alleged act of defamation of character or injury to reputation is not cognizable in a complaint filed under § 1983. *Paul v. Davis,* 424 U.S. 693, 710-12 (1976); *see also Von Stein v. Brescher*, 904 F.2d 572, 583 (11th Cir. 1990).

Padgett's claim that Defendant Mosley's conduct subjected him to verbal harassment and/or amounted to threats, likewise entitles him to no relief. The law is settled that verbal harassment and abuse and mere threatening language and gestures of a custodial officer do not amount to a constitutional violation. *McFadden v. Lucas*, 713 F.3d 143, 146 (5th Cir. 1983); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973). In light of the foregoing, Defendants, are due to be granted summary judgment on Padgett's defamation and verbal threats and harassment claims.

*E. The Conspiracy Claim*

Padgett contends that Defendants Mosley and Campbell conspired to violate his constitutional rights by labeling him a sexual predator, removing certain family members from his visiting list, and authorizing establishment of a restricted privileges dormitory ("hot dorm"). These claims entitle Padgett to no relief.

A conspiracy claim justifiably may be dismissed because of the conclusory, vague, and general nature of the allegations of a conspiracy. *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984). The court has carefully reviewed Padgett's conspiracy allegation.

At best, his assertions are self-serving, purely conclusory allegations that fail to assert those material facts necessary to establish a conspiracy between Defendants Mosley and Campbell. Other than his self serving allegations, Padgett presents nothing to this court which indicates that Defendants Mosley and Campbell entered into a conspiracy to violate his constitutional rights. In light of the foregoing, the court concludes that Padgett's bare allegations of a conspiracy are insufficient to support a claim for relief under 42 U.S.C. § 1983. *Fullman*, 739 F.2d at 556-557.

*F. The Visitation Claim*

Padgett alleges that Defendant Mosley violated his constitutional rights by interfering with his family visits. Defendant Mosley denies that she unconstitutionally interfered with Padgett's ability to visit with family members. Specifically, Defendant Mosley maintains that concerns over those persons permitted to visit Padgett arose from monitored telephone calls between Padgett, his wife, and his stepdaughter. Defendant Mosley's concerns led her to write a letter to the Department of Human Resources in February 2005 in which she advised the department that Padgett is serving a nine year sentence for sexual abuse of three of his step grandchildren. She further informed the department that she had concerns that Padgett may have had sexual relations with his stepdaughter and may possibly be the father of his stepdaughter's son. Until her concerns were addressed, Defendant Mosley advised the Department of Human Resources that Padgett's stepdaughter and her child would be removed from Padgett's visitor's list. (Doc. No. 10, Exh. 2.)

Neither prisoners nor their would-be visitors have a constitutional right to prison

visitation. *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454 (1989). The Eleventh Circuit has established that "inmates do not have an absolute right to visitation, such privileges being subject to the prison authorities' discretion." *Caraballo-Sandoval v. Honsted,* 35 F.3d 521, 525 (11th Cir.1994). Further, the viability of due process claims regarding visitation privileges is even more suspect under *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995) (holding that a prison occurrence may amount to a deprivation of a liberty interest entitled to procedural protection under the Due Process Clause of the Constitution if (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, and (2) the liberty interest in question is one of real substance, *i.e.*, limited to freedom from restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or state action that "will inevitably affect the duration of [a] sentence.").

The court finds that the restriction on visitation privileges about which Padgett complains, without more, is not an atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life. Further, the evidence before the court concerning the suspension of Padgett's visitation privileges with his stepdaughter and her child show that Defendant Mosley's actions were reasonably related to the promotion of legitimate security and safety interests of the institution. *See Turner v. Safley,* 482 U.S. 78, 89 (1987). Defendants, therefore, should be granted summary judgment on Padgett's visitation claim.[2]

---

[2] The court notes Padgett's contention that Defendant Mosley had no right to interfere with his telephone calls. (Doc. No. 15, Padgett Affidavit at 2.) A prisoner's right to telephone access, however, is "subject to rational limitations in the face of legitimate security interests of the penal institution."

*G. Standard Operating Procedures Claim*

Padgett, in his opposition, complains in conclusory fashion that Defendants are operating ECF under illegal and obsolete standard operating procedures ["SOP"] (C-50) and have failed to implement a new SOP C-50. (Doc. No. 15, Padgett Affidavit at 2, 3.) An essential element of a § 1983 action is that the conduct complained of deprived a plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Parratt v. Taylor*, 451 U.S. 527 (1981). While a violation of a state or federally-created liberty interest can amount to a violation of the Constitution, not every violation of state or federal law or state or federally-mandated procedures is a violation of the Constitution. *See Buckley v. Barlow*, 997 F.2d 494 (8th Cir. 1993); *Shango v. Jurich*, 681 F.2d 1091, 1100 (7th Cir. 1982).

Here, that Defendants may have failed to timely implement new operating procedures or otherwise comply with administrative regulations provides Padgett no basis for relief in this complaint. *See Brown v. Dodson,* 863 F. Supp. 284 (W.D. Va. 1994). Any right of that

---

*Strandberg v. City of Helena,* 791 F.2d 744, 747 (9th Cir. 1986); *see also United States v. Noriega,* 917 F.2d 1543, 1551 n.10 (11th Cir. 1990) ("It is not unusual or unreasonable to condition the use of telephones by penal inmates on monitoring of the telephone calls by the authorities charged with maintaining the security of the penal facility. *See e.g., Feeley v. Sampson,* 570 F.2d 364, 373-374 (1st Cir.1978) (suggesting that striking an appropriate balance between the interests of prison authorities and prisoners could be achieved by conditioning prisoners' access to telephones on their recognition that prison guards have authority to monitor telephone conversations)."). *See also* Alabama Department of Corrections Administrative Regulation 431 - Inmate Telephone System, available at htttp://www.doc.state.al.us/adminregs.asp.  Administrative Regulation 431 defines the inmate telephone system as "a system which monitors, records, and controls the use of telephones utilized by the inmates at all institutions." *Id*.

nature is grounded in state law or regulation and the mere failure of an official to follow state law or regulation, without more, does not violate constitutional minima. *See, e.g.,* Murray v. Mississippi Dept. of Corrections, 911 F.2d 1167, 1168 (5th Cir. 1990); *see also Sandin*, 515 U.S. 472. Because this claim is frivolous, it is due to be summarily dismissed under 28 U.S.C. § 1915(e)(2)(B)(i) as it asserts "infringement of a legal interest which clearly does not exist." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

*H. Donal Campbell*

To the extent Padgett's claims against former Commissioner Campbell seek to hold him liable for the actions of his subordinates, this claim must fail. The law is well settled that a defendant cannot be held liable in an action brought pursuant to 42 U.S.C. § 1983 under the theory of *respondeat superior* or on the basis of vicarious liability. *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994); *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990); *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). Consequently, Defendant Campbell's motion for summary judgment with respect to Padgett's claim that he is liable because of his supervisory position as former Commissioner of the Alabama Department of Corrections should be granted.

*I. State Law Claims*

The court understands Padgett's complaint to assert claims that the actions of Defendants violated state law. Review of these claims is appropriate only upon exertion of this court's supplemental jurisdiction. In the posture of this case, however, the exercise of such jurisdiction is inappropriate.

For a federal court "[t]o exercise [supplemental] jurisdiction over state law claims not otherwise cognizable in federal court, 'the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a "common nucleus of operative fact."'" *L.A. Draper and Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984). The exercise of supplemental jurisdiction is completely discretionary. *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims." *L.A. Draper and Son*, 735 F.2d at 428. In view of this court's resolution of the federal claims presented in the complaint, Padgett's pendent state claims are due to be dismissed. *Gibbs,* 383 U.S. at 726 (if the federal claims are dismissed prior to trial, the state claims should be dismissed as well); *see also Ray v. Tennessee Valley Authority*, 677 F.2d 818 (11th Cir. 1982).

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendant's Motion for Summary Judgment (Doc. No. 10) be GRANTED as to all federal claims, and those claims be DISMISSED with prejudice;

2. Plaintiff's challenge to the validity and/or legality of Easterling Correctional Facility's standard operating procedures be DISMISSED under 28 U.S.C. § 1915(e)(2)(B)(i);

3. The court decline to exercise supplemental jurisdiction over the Plaintiff's state law claims and those claims be DISMISSED without prejudice;

4. Judgment be ENTERED in favor of Defendants and against Plaintiff; and

5. Costs be taxed against Plaintiff for which execution may issue.

It is further

ORDERED that the parties shall file any objections to the Recommendation on or before **August 15, 2007**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 3rd day of August 2007.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE